Pro Se 8 (Rev. 12/16) Complaint for Violation of Fair Labor Standards

# UNITED STATES DISTRICT COURT

for the

District of

Division

FILED ___ LODGED
___ RECEIVED ___ COPY

JUN 2 0 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

|  |  |  |
|---|---|---|
| Udayshankar Rudhramurth | ) | Case No. **CV25-02145-PHX-SPL** |
| _____ | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) |  |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |  |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | Jury Trial: *(check one)* ☒ Yes ☐ No |
| *please write "see attached" in the space and attach an additional* | ) |  |
| *page with the full list of names.)* | ) |  |
| -v- | ) |  |
|  | ) |  |
|  | ) |  |
| O'Reilly Auto Parts | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |
| *(Write the full name of each defendant who is being sued. If the* | ) |  |
| *names of all the defendants cannot fit in the space above, please* | ) |  |
| *write "see attached" in the space and attach an additional page* | ) |  |
| *with the full list of names.)* | ) |  |

## COMPLAINT FOR VIOLATION OF FAIR LABOR STANDARDS

### I.  The Parties to This Complaint

### A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Udayshankar Rudhramurthy |
| Street Address | 10012 E Bell Road |
| City and County | Scottsdale |
| State and Zip Code | AZ 85260 |
| Telephone Number | 480-268-4802 |
| E-mail Address | urudhramurthy@gmail.com |

Pro Se 8 (Rev. 12/16) Complaint for Violation of Fair Labor Standards

**B.      The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | O'Reilly Auto Parts |
| Job or Title *(if known)* | Brandon Pratt |
| Street Address | 233 South Patterson Ave |
| City and County | Springfield |
| State and Zip Code | MO 65802 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | O'Reilly Auto Parts |
| Job or Title *(if known)* | Becky McLand |
| Street Address | 233 South Patterson Ave |
| City and County | Springfield |
| State and Zip Code | MO 65802 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |

Pro Se 8 (Rev. 12/16) Complaint for Violation of Fair Labor Standards

State and Zip Code

Telephone Number

E-mail Address *(if known)*

**C.      Place of Employment**

The address at which I am employed or was employed by the defendant(s) is

| | |
|---|---|
| Name | Udayshankar Rudhramurthy (Remote Worker) |
| Street Address | 10012 E Bell Road |
| City and County | Scottsdale |
| State and Zip Code | AZ 85260 |
| Telephone Number | 480-268-4802 |

**II.      Basis for Jurisdiction**

This action is brought pursuant to *(check all that apply)*:

☒      Fair Labor Standards Act, as codified, 29 U.S.C. §§ 201 to 209.

☒      Relevant state law

☒      Relevant city or county law

**III.      Statement of Claim**

State as briefly as possible the facts of your case.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.      Nature of employer's business:

Data Strategy Supervisor

B.      Dates of employment:

04/23/2024

C.      Employee's job title and a description of the kind of work done:

Data Strategy Supervisor

D.      Rate, method, and frequency of wage payment:

150,000 / Year, Bi-Weekly

E.      Number of hours actually worked each week in which a violation is claimed:

In addition to my regular duties, I consistently worked an extra 10 to 20 hours per week, resulting in approximately 300 hours of unpaid or uncompensated overtime.

F.      Description of the alleged violation(s) *(check all that apply)*:

☐       Failure to pay the minimum wage *(explain)*

☒       Failure to pay required overtime *(explain)*

In addition to my regular duties, I consistently worked an extra 10 to 20 hours per week, resulting in approximately 300 hours of unpaid or uncompensated overtime.

☒       Other violation(s) *(explain)*

1. Termination or forced resignation

2. Verbal Harassment

3. Creation of a Hostile Work Environment

4. Threats and Coercion Leading to Forced Resignation

5. Wrongful Termination

6. Bias and Discriminatory Treatment

7. Retaliation for Reporting Misconduct

Pro Se 8 (Rev. 12/16) Complaint for Violation of Fair Labor Standards

G.    Date(s) of the alleged violation(s):

May 17, 2024: Imani verbally harassed me, contributing to the creation of a hostile work environment.

May 17, 2024: I immediately reported the incident to my direct supervisor, Dwayne Forsee. During our discussion, Dwayne mentioned that Susie (my predecessor) had previously documented and forwarded a list of serious concerns regarding Imani's behavior.

July 27, 2024: First Human Resources interview conducted by Becky McLand regarding Imani's conduct.

December 30, 2024: Second Human Resources interview conducted by Becky McLand concerning issues involving Imani, Alexx, and Kaylin.

January 24, 2025: Final HR investigation took place, after which I was forced to resign under pressure.

May 8, 2025: The Arizona Department of Economic Security completed its investigation and issued the following determination:
"You said you were discharged, but your employer stated that you quit. Your employer did not provide documentation to show that you quit. You were discharged, and there is no evidence to show that the discharge was for misconduct."

H.    Additional facts:

A charge was filed with the Equal Employment Opportunity Commission (EEOC), Case No. 540-2025-04334. In accordance with EEOC procedures, Udayshankar Rudhramurthy is filing this case within the 90-day deadline following the issuance of the Dismissal and Notice of Rights, dated May 19, 2025. A copy of the notice is attached for reference.

1.0 I am writing to formally address the circumstances surrounding my forced resignation from O'Reilly and to seek clarification on the reasons behind this decision.

I have been a U.S. Citizen for nearly 20 years and am a graduate of Stanford University.

2.0 Background and Employment Terms

2.1 After completing 13 rounds of interviews, including discussions with Executive Vice President and Chief Information Officer Scott Ross and IT Executive Corey Thompson, I received a permanent job offer at O'Reilly. HR representative Rick Tobin coordinated the hiring process. My initial start date was scheduled for April 22, 2024, but was rescheduled to April 23, 2024, due to a last-minute laptop delay. Unfortunately, this delay was not communicated clearly by Dwayne.

2.2 The original job offers explicitly outlined a work-from-home arrangement. However, after just one week, I was informed that I would be required to report to the office four days a week, contradicting the agreed terms.

3.0 Leadership Role and Team Challenges

3.1 As BSA Lead and Product Manager, I was responsible for leading a nine-member team. Upon my appointment, I observed that the team operated in silos with minimal collaboration. To enhance efficiency, I implemented an Agile framework, including daily stand-up meetings. Despite these efforts, certain team members—including Imani, Kaylin, and Alexx—failed to provide regular status updates.

Additionally, I inherited a team dynamic influenced by previous leadership. My predecessor, Suisse, had expressed concerns about Imani's performance before her departure. Dwayne later echoed these concerns in a Zoom meeting rather than addressing them directly with Imani.

4.0 May 17, 2024: Imani verbally harassed me, contributing to the creation of a hostile work environment.

4.1 On May 17th, we had a constructive meeting that included Imani. After the meeting concluded, Imani asked Sam and me to stay behind. During that time, she verbally harassed me and created a hostile work environment.

4.2 Following the incident, Imani was removed as my direct report, and she now reports directly to Dwayne.

4.3 Since then, I have had no further interaction with her.

4.4 After she moved, she complained to HR.

5.0 Uday's Report to Dwayne Regarding Imani

5.1 On May 17th, I promptly escalated the incident to my direct manager, Dwayne Forsee. During our conversation, Dwayne noted that Susie—my predecessor—had previously documented and shared a comprehensive list of concerns about Imani's conduct.

6.0 First Human Resources Interview Conducted by Becky Concerning Imani

6.1 The investigation involved Uday, accused of belittling colleague Imani Wilson, and Becky, the investigator. The inquiry focused on Imani's complaint about a May 17 meeting and alleged ongoing mistreatment.

6.2 Uday denied the claims, saying the meeting was routine and used a peer's work as an example for documentation expectations. Imani was responsible for a key project use case but reportedly missed meetings and provided no updates. After the meeting, Imani said she felt "stomped on," referencing her race, but Uday did not respond.

6.3 Uday plans to submit supporting evidence, including an email confirming clear expectations and attendance records. When asked about a pattern of mistreatment, Uday denied it, citing Imani's low participation.

6.4 Uday also denied any racial bias, noting his diverse background. Despite challenges, Uday claims to have delivered the project successfully and kept leadership informed. Next, Uday will complete a written statement and submit it by Monday.

7.0 84 Day evaluation

7.1 No specific feedback was shared with me during my 84-day evaluation, which was simply marked as 'Satisfactory' or 'Meets Expectations.' However, the evaluation document was not provided on time—it was delayed by an additional month. I had to follow up with HR to inquire about the status, and the document was eventually submitted.

8.0 As Alexx Dum's primary supervisor, I supported her during a personal crisis, approved her PTO, reassigned her workload, and backed her requested transfer—only to later learn she filed an unfounded HR complaint after transitioning to a new team.

8.1 Alexx Dum, a member of my team, reported directly to me, with secondary reporting responsibilities to Dwayne and Caleb. I served as her primary supervisor.

8.2    Throughout her time on the team, Alexx consistently failed to attend scheduled meetings.
8.3 I later became aware that she was dealing with a serious family matter—her father had been diagnosed with cancer.

8.4 Upon learning this, I expressed my support and encouraged her to take PTO, emphasizing that family should come first. I also advised her to submit a formal PTO request via email and our office communication system, which I subsequently approved.

8.5 To ensure continued support for her responsibilities during her absence, I asked Coby to allocate 20% of his time to assist with her workload.

8.6 I also communicated with Dwayne about the situation and informed him that Alexx had not been attending our one-on-one meetings consistently.

8.7 On August 21, 2024, during one of our one-on-one meetings, Alexx shared that she was no longer feeling motivated in her current BSA role. She expressed interest in making a lateral move into a development position and requested a transfer out of the team. I conveyed my support for her career goals and agreed to the transition. That same day, she followed up with an email and copied Dwayne to initiate the process.

8.8 On September 25, 2024, Alexx officially transferred out of my team and began reporting to Teresa.

8.9 After her transfer, she submitted a complaint to HR, making the following allegations, which I firmly assert are not true.

9.0 Concerns Over Performance Evaluations

9.1 Throughout 2024, I faced repeated pressure from Dwayne to alter performance evaluations, particularly for Kaylin, whose primary contributions were limited to coordinating team-building activities. As a Technical Writer, her tangible project deliverables were minimal. Despite my professional assessment, Dwayne persistently urged me to promote her, which I resisted due to a lack of merit-based justification.

9.2 Kaylin was never visible on camera. In one meeting, she mentioned that she hadn't showered, so she wouldn't appear on the Zoom call. When she did appear, she had a cat on her head and was playing around. Please reach out to Sriram Akella for the BSA Team Zoom video recording, where you can see this for yourself.

9.3 I provided Kaylin with the opportunity to take on secondary responsibilities, such as taking notes for CDP, Stage Gate Review, and other projects. However, she has failed to demonstrate the technical writing skills necessary for these tasks. She consistently offers excuses and has not contributed any tangible value to the BSA organization since Dwayne supported her, as I mentioned in the audio during the evaluation. Several team members have expressed similar concerns. The core issue seems to be that, due to Dwayne's special interest in her, she is able to avoid accountability. Unfortunately, I have felt powerless in this situation, and as a result, I've had to reassign her tasks to others.

10.0 Second Human Resources Interview Conducted by Becky McLand Regarding Imani, Alexx, and Kaylin (12/30/2025)
On December 30, 2025, a second Human Resources interview was conducted by Becky McLand, focusing on matters involving Imani, Alexx, and Kaylin. During this meeting, I was asked about my one-on-one meetings, time entry records, team members' family medical situations, leave of absence (LOA) issues, and gender-related concerns. I provided HR with all relevant supporting documentation to address these topics thoroughly.

11.0 Regarding Uday Year-End Review and Allegations

11.1 During my year-end review, the only feedback I received was to conduct one-on-one meetings with team members to discuss project hours rather than addressing them in a public setting.

11.2 There was no documented evidence in my evaluation regarding any allegation of differential treatment between Indian and non-Indian employees. This concern had never been raised before, making it extremely surprising when it was brought up during my forced resignation. Additionally, no training on this matter was ever provided or mentioned. My year-end review was entirely clean.

11.3 Furthermore, my evaluation from the previous year met all expectations without any development plan or identified need for improvement.

12.0 Diminished Responsibilities and Job Security Concerns

12.1 My 84-day evaluation was not received on time. I reached out to Rick Tobin to check if there were any delays or concerns. After following up, I finally received it on 08.14.2024, though it was originally due on 07.16.2024.

12.2 Between January 1 and January 21, 2025, key responsibilities—including the Stage Gate review meeting—were reassigned to the PMO office under Johana Gonzalez leadership without explanation. Additionally, for the past three months, Kate Hundley has been overseeing the BSA team members for

the Snowflake migration. In their place, I was given only minimal tasks, raising concerns about my role and standing within the company.

12.3 I noticed a pattern where leadership consistently excluded me from email communications on several projects. For example, in CDP Use Case 4, they intentionally left me out and only looped me in at the final stage as a mere FYI.

12.4 I also requested to be included in other projects, such as Google Analytics, Transportation Management Systems, and the Customer Data Platform (CDP). During our meeting, Senthil responded, 'Let me think about it.' However, in the following meeting, the only task assigned to me was for RDT. This further heightened my concerns, leading me to believe that they may be planning to let me go.

12.5 Furthermore, I later learned that Dwayne had also conducted one-on-one meetings with my team members. In June 2024, I discovered that he had a skip-level meeting with Senthil. When I inquired about it, Senthil advised me to ignore it and focus on my assigned tasks.

12.6 It was very well orchestrated; they clearly wanted to get rid of me during my final pay period.

13.0 On January 22, 2025, during a routine Zoom meeting, Dwayne informed me that Imani had resigned as of January 14, 2025. The next day, during our one-on-one meeting, we discussed H1 verification for Sriram, my upcoming Uday India trip, and project updates. However, later that evening, I noticed a meeting scheduled by Dwayne regarding an HR investigation from December 30, 2024.

14.0 Final HR Investigation and Forced Resignation

14.1 On January 24, 2025, I was called into a meeting regarding the conclusion of an HR investigation. Without any prior warnings, documented feedback, or training related to the issue, I was abruptly informed that I had allegedly exhibited preferential treatment toward male and Indian team members. I was given an ultimatum: resign immediately or face termination.

14.2 During that meeting, I requested clarification regarding my accrued PTO and earned bonus. Dwyane stated that, due to the alleged policy violation, I was ineligible to receive either. On the evening of January 29th, I sent an email to the CEO and CIO, copying my direct supervisor, HR, and my manager's manager. HR responded promptly regarding my COBRA insurance, and my accrued PTO was paid the following day. My bonus was issued at a later date.

15. Unemployment Investigation and Response Letter
After January 24th, 2025, I was involuntarily terminated from my job. Initially, I did not apply for unemployment benefits due to the nature of the termination. However, as my financial situation worsened and I ran out of funds, I eventually filed for unemployment. Based on their investigation, the unemployment office concluded that I had resigned from the position. They requested documentation to clarify the situation, but O'Reilly refused to provide any supporting documents to the unemployment agency.

10.0 Summary
In summary, in an effort to protect the O'Reilly brand and manage the situation involving Imani, I was pressured into resigning and used as a scapegoat. Following this, HR and Dwyane presented false allegations regarding my treatment of team members. For the record, Imani had not reported to me since May 2024, as she was under Dwyane's supervision at that time. Additionally, Alexx transitioned off my team on September 25, 2024.

I experienced a hostile work environment in which Uday was subjected to discrimination and harassment by team members—Iamani, Alexx Dum, and Kaylin—who reported directly to me. I, in turn, reported to Dwayne.

Despite being fully aware of the situation, my immediate manager, Dwayne, along with HR and upper management, failed to take any corrective action. Instead, it appears that Dwayne, HR, and senior leadership conspired to unlawfully terminate Uday.

Because I was assisting with Uday's case, I believe I was unfairly targeted and ultimately wrongfully terminated from my position in retaliation.

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Plaintiff seeks the following relief:
- Back pay.
- Compensatory damages for emotional distress.
- Punitive damages.
- Lost Benefits.
- Unemployment Benefits
- I withdrew approximately $22,000 from my Rollover IRA with penalties to cover expenses after my termination and during my job search.
- An award of damages for lost benefits, including 401(k) employer matching contributions
- Loss of access to the company's Employee Stock Purchase Plan (ESPP) or other equity compensation programs.
- Declaratory judgment that Defendant violated employment laws.
- Any further relief the Court deems just

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

## A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 06|20|2025

Pro Se 8 (Rev. 12/16) Complaint for Violation of Fair Labor Standards

Signature of Plaintiff

Printed Name of Plaintiff *Udayshankar, Rudhramurthy.*

**B.**    **For Attorneys**

Date of signing: _____

Signature of Attorney _____

Printed Name of Attorney _____

Bar Number _____

Name of Law Firm _____

Street Address _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0002
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-

B) Issued On: 05/19/2025

**To:** Mr. Udayshankar Rudhramurthy
10012 E Bell Road
SCOTTSDALE, AZ 85260
Charge No: 540-2025-04334

EEOC Representative and email:    JEREMY YUBETA
Enforcement Manager
jeremy.yubeta@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 540-2025-04334.

On behalf of the Commission,

Melinda Caraballo
District Director

**Cc:**
Brandon Pratt
O'Reilly Auto Parts
233 South Patterson Ave
Springfield, MO 65802

Becky McLand
233 South Patterson Ave
SPRINGFIELD, MO 65802

O'Reilly Auto Parts
10012 E Bell Road
SCOTTSDALE, AZ 85260

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 540-2025-04334 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Melinda Caraballo, 3300 North Central Avenue Suite 690, Phoenix, AZ 85012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 540-2025-04334 to the District Director at Melinda Caraballo, 3300 North Central Avenue Suite 690, Phoenix, AZ 85012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

EEOC No. 540-2025-04334 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
| --- | --- |
| EEOC | 540-2025-04334 |
| Arizona Attorney General's Office, Civil Rights Division | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Mr. Udayshankar Rudhramurthy

Phone No.:        480-268-4802
Year of Birth:    1972
Mailing Address: 10012 E Bell Road
SCOTTSDALE, AZ 85260

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: O'Reilly Auto Parts

No. Employees, Members: 101 - 200 Employees

Phone No.: (417) 862-2674

Mailing Address: 233 South Patterson Ave

SPRINGFIELD, MO 65802, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

National Origin

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 05/17/2024
Latest: 01/24/2025

THE PARTICULARS ARE:

On or around April 23, 2024, I was hired by the employer above as the Data Strategy Supervisor. I have always performed my job in a satisfactory manner.

On or around May 17, 2024, I was harassed by one of the lead business analysts on my staff, she yelled at me and made false allegations that I was treating her worse because she was an African American female. I explained that her race or sex did not factor in how I rated her, I only cared about the work that she performed which was not satisfactory. I immediately informed my supervisor (Dwayne Foresee) and human resources (Becky McClelland) of this issue; she was then moved under the supervision of my supervisor Mr. Foresee at the time. They also informed me that they had ongoing issues with this employee, but I just had to document everything that had happened. On or around July 26, 2024, HR held a meeting where I was questioned about the issues with the employee mentioned above, I stated that she did not participate in meetings and failed to produce any work. On or around August 21, 2024, I was placed to supervise another Lead Analyst Alexx Duam, she was good friend with the lead analyst who had made false claims against me. Ms. Duam then reported me to HR because she claimed I did not approve her FMLA based on her father's condition. This is untrue and I showed HR the communications where I told Ms. Duam that a work/life balance is important, and I would support anything she needed to do to take care of her family. On or around December 30, 2024, I was called to another meeting with HR where I was questioned about the two individuals mentioned above, I was also asked why I was not promoting females. I stated that I was not their supervisor and that my

EEOC No. 540-2025-04334 | FEPA No.

supervisor was the one to make the final decision. The next day I was given a great rating by my supervisor. On or around January 24, 2025, I was called into a meeting with HR and my supervisor where they terminated my employment for allegedly violating policy and giving preferential treatment to certain employees. I was then informed that I would not receive any bonuses, my remaining PTO or any benefits due to this alleged violation. This decision was eventually overturned after I send recordings of the events that took place to the CEO (Brad Beckham) and CIO (Scott Ross). I believe I was wrongfully accused and wrongfully terminated.

I believe I have been discriminated against because of my national origin, Asian/Indian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.


Digitally Signed By: Mr. Udayshankar Rudhramurthy
04/29/2025
_____
Charging Party Signature & Date


If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.


I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.


_____
Notarized Signature of Charging Party


Subscribed and sworn to before me this date:




Signature of Notary_____

Printed Name _____

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.